The People of the State of New York ex rel. Dennis Grady, Respondent, v. Charles H. Knox and Others, as Commissioners, Constituting the Municipal Civil Service Commission of the City of New York, Appellants.

*New York police force — promotion for meritorious and heroic conduct can be made only after a competitive civil service examination.*

A person appointed upon the police force of the city of New York at a time when the Consolidation Act (Laws of 1882, chap. 410, § 271) provided that promotions should be made only on the grounds of "meritorious police service and superior capacity," and when the Civil Service Law (Laws of 1883, chap. 354, as amd. by Laws of 1884, chap. 410) provided that promotions should be made "on the basis of merit and competition," who continues to serve after the passage of the New York charter (Laws of 1897, chap. 378), cannot be promoted by the police commissioners for meritorious and heroic conduct, but must pass the competitive examination required by subdivision 4 of section 304 of the New York charter.

O'Brien, J., dissented.

*People ex rel. Schelpp* v. *Knox* (48 App. Div. 479), distinguished.

Appeal by the defendants, Charles H. Knox and others, as commissioners, constituting the municipal civil service commission of the city of New York, from an order of the Supreme Court, made

at the New York Special Term and entered in the office of the clerk of the county of New York on the 6th day of July, 1900, granting a peremptory writ of mandamus, requiring the defendants, as commissioners, to forthwith certify upon the payroll of the relator that the said Dennis Grady has been promoted from the position of roundsman to that of sergeant of police of the city of New York, in pursuance of law and of the rules made in pursuance of law.

*Theodore Connoly,* for the appellants.

*Abram I. Elkus,* for the respondent.

INGRAHAM, J.:

The relator applied for, and was granted by the court below, a peremptory writ of mandamus requiring the defendants, as commissioners constituting the municipal civil service commission of the city of New York, to certify upon the payroll of the relator that he had been promoted from the position of roundsman to that of a police sergeant on the police force of the city of New York in pursuance of law and of the rules made in pursuance of law. It appeared by the affidavit upon which this writ was granted that the relator was duly appointed a member of the police force of the department of police of the then city of New York as patrolman on April 14, 1886, and occupied that position until the 22d day of April, 1892, when he was made a detective sergeant; that he continued in the performance of his duty as detective sergeant until July 20, 1895, when he was transferred to the twenty-seventh precinct; that on June 7, 1896, he was appointed to the position of roundsman of the said police department, and that on May 8, 1900, the board of police of the city of New York duly promoted the relator from the position of roundsman to that of sergeant because of meritorious and heroic conduct in the performance of his duties as roundsman. This promotion was without competitive examination as required by subdivision 4 of section 304 of the charter of the city of New York. The question presented is whether the board of police had the power to promote an officer from a lower to a higher grade in the department without a competitive examination.

At the time the relator was appointed to the police force, appoint-

ments and promotions were governed by the New York City Con-
solidation Act (Laws of 1882, chap. 410). By section 271 of that
act it was provided that the promotion of officers of the police force
should be made by the board of police "only on grounds of meri-
torious police service and superior capacity." In 1883 there was
passed the original Civil Service Act of the State of New York
(Laws of 1883, chap. 354). By section 1 of the act provision is
made for the appointment of the State Civil Service Commission;
and by subdivision 2 of section 2 it is provided that the rules to be
established by the commissioners shall provide and declare that,
"Promotions from the lower grades to the higher shall be on the
basis of merit and competition." By chapter 410 of the Laws of
1884, section 8 of this act was amended, and provision was made
for the formulation of regulations for the admission of persons into
the civil service in each city of the State by the mayor of such city,
but it was enacted that the regulations so to be prescribed must, among
other things, provide and declare as is provided in the 2d subdivision
of the 2d section of the act with reference to the regulations for
admission to the civil service of the State, thus expressly providing
that the regulations to be prescribed shall provide for promotion from
the lower grades to the higher, "on the basis of merit and competi-
tion." The section further provides that "after the termination of
three months from the passage of this act, no officer or clerk shall
be appointed, and no person shall be admitted to or be promoted in
either of the said classes now existing, or that may be arranged
hereunder pursuant to said rules, until he has passed an examina-
tion, or is shown to be exempted from such examination, in con-
formity with such regulations." It further provides: "But the
authority by this section conferred shall not be so exercised as to
take from any policeman or fireman any right or benefit conferred
by law, or existing under any lawful regulation of the department
in which he serves." And it is upon this latter clause, which has
been continued in force by various enactments and was finally
included in the charter of the Greater New York (§ 125), that the
relator relies.

After the passage of this act, and while its provisions as to the
appointment of public officers within the city of New York were in
force, this relator was appointed a member of the police force. By

that. appointment he certainly acquired no right to be promoted in the force except in accordance with the provisions of law then in force. The Consolidation Act (§ 271), before cited, provides that " promotions of officers and members of the police force shall be made by the board only on grounds of meritorious police service and superior capacity ; " and by the Civil Service Act of 1883 it was declared that the rules to be formulated regulating the promotion of police officers should provide that promotions from the lower grades to the higher should be " on the basis of merit and competition." Under these provisions it seems clear that each member of the police force thereafter appointed acquired the right to apply for promotion under the provisions of law as it then existed, and had the right, if the result of that competitive examination provided for by this act demonstrated his fitness for the office, to be promoted ; and it was the right that the relator acquired upon his appointment to the police force ; but it was this right also that was vested in each of the other members of the force. By chapter 569 of the Laws of 1895, section 265 of the Consolidation Act was amended and provision was made for the promotion of officers of the force and for the appointment of a board by the police commissioners to determine the officers to be promoted. The police commissioners were to make regulations which were to provide for promotion from the lower grades to the higher, and it was provided that such promotions should be on the basis of seniority, merit and competition, and that none of the provisions of section 8 of chapter 354 of the Laws of 1883 should apply to the police department. The provision of section 271 of the Consolidation Act which provided that promotions of officers and members of the police force should be made by the board only on grounds of meritorious police service and superior capacity, was amended by providing that no promotion should be made except in the case of a vacancy in the office of chief of police, unless the same was recommended by the chief of police in writing, stating his reasons for such recommendation ; and the Consolidation Act as thus amended was in force at the time of the enactment of the charter of the new city of New York (Chap. 378, Laws of 1897). By that charter the power to make rules and regulations for appointment to and promotion in the police force was taken

from the police commissioners and vested in the city civil service commissioners. By section 288 of the charter it was provided that " Promotions of officers and members of the police force shall be made by the police board, as provided in section three hundred and four of this act on grounds of seniority, meritorious police service and superior capacity." By section 304 it is provided that " the civil service commissioners shall prescribe such regulations for the admission of persons into the police force, and into the service of the police department, as may best promote the efficiency thereof, and ascertain the fitness of candidates in respect to character, knowledge and ability for the police force. The regulations so to be prescribed shall, among other things, be in furtherance of the following provisions : * * * (Subdivision 4) Promotions from the lower grades to the higher grades shall be on the basis of seniority, of merit and of excellence, as shown by competitive examination. The police board shall transmit to the civil service commission the record of each candidate for promotion."

It was the intention of the Legislature by these provisions of the charter to provide a system under which all promotions of police officers should be based on seniority, merit and excellence, and that favoritism or personal preference should, so far as possible, be excluded in considering promotions. The competitive examination was to be an examination under the rules prescribed by the civil service commissioners. The examiners were to consider the record of the police officer, as is shown by the provision that the board of police was to transmit to the civil service commissioners the record of each candidate for promotion; and this competition, which was to take place under the regulations established by the civil service commissioners, was thus to include the police service and the meritorious acts that the officer who was an applicant for promotion had rendered in the performance of his duty, as well as such examination as the rules should prescribe as to his fitness for the position to which he sought to be promoted. The clear intent of the Legislature was to take away from the commissioners of police, or their appointees, the right to conduct this competitive examination and to determine which of the officers that had applied for promotion was entitled thereto. In all the provisions in relation to the appointment and promotion of

police officers which were in force prior to the passage of the new charter, appointment to the police force and promotion in the force were to be made by the commissioners. By the Consolidation Act before the passage of the Civil Service Act the determination as to the officers to be promoted was to be based upon meritorious police service and superior capacity, but the meritorious service and superior capacity was then to be determined by the individual judgment of the commissioners. When the Civil Service Act was made applicable to the police department of the city of New York the power of the commissioners to select without restriction those officers to be promoted was limited so that thereafter the rules for the enforcement of the Civil Service Act should provide that these promotions should be upon the basis of merit and competition, thus introducing a new element by which a promotion upon the force was to be determined by a competition among those who made application therefor. And all through the various acts in relation to the appointment and promotion in the police department, passed since that time, this principle has been kept in view, restricting the power of the police commissioners as to the promotion of police officers, and providing that the fitness of the applicant should be ascertained by an independent officer and not by the police commissioners, until we have in the charter the final provision which has been made whereby this promotion is to be the result of a competition in which the police record of the officer applying for promotion is to be considered, but this competition is now to be conducted, not by the police commissioners, but by the civil service commission and the officer selected for promotion is to be determined by them. Certainly this change, by which the right to a promotion was taken from the discretion of the police commissioners and given to the civil service commissioners, to be determined by them as the result of a competition among all of the officers of the grade from which the promotion was to be made who applied for promotion, did not take away from any police officer any right or benefit then conferred upon him by law or by any lawful regulation of the department in which he served. Transferring from one public officer to another the right to determine his meritorious police service or fitness for a higher office did not take away or change his right to promotion. The only change has been in the method of ascertain-

ing the superiority of applicants for promotion, and this change, by which special officers are designated as the ones who are to conduct the competition by which such superiority can be ascertained, would seem to make that right more secure. But, as before stated, when this relator was appointed to the police force the law of this State provided that promotion should be ascertained on the basis of merit and competition, and this provision of the charter to which attention has been called is simply giving effect to the provision of law that was in force at the time of his appointment on the force, and when he acquired whatever right he had to promotion.

I have thus examined this question without reference to the case to which our attention has been called (*People ex rel. Schelpp* v. *Knox*, 48 App. Div. 477). That case arose under the provisions of law in relation to the city of Brooklyn, prior to the adoption of the new charter of the city of New York. There an entirely different provision in the charter of the city of Brooklyn had to be construed, and one which undoubtedly conferred upon the policemen who were members of the Brooklyn police force an entirely different right than was conferred by the New York Consolidation Act upon the members of the police force when the relator was appointed. The attention of the court was not called to the provisions of the Civil Service Act relating to the old city of New York which are now before us; and while I should, without hesitation, follow that decision if it involved the question here under consideration, it seems to me that an entirely different question is now presented, and for the reasons before stated I am satisfied that the rule there enunciated has no application to officers appointed to the New York police force, and that the relator is not entitled to be promoted, except after the competitive examination provided for by the charter. The order must, therefore, be reversed, and the motion for mandamus denied, with costs.

Van Brunt, P. J., Patterson and Hatch, JJ., concurred; O'Brien, J., dissented.

Hatch, J. (concurring):

The case of *People ex rel. Schelpp* v. *Knox* (48 App. Div. 477), which arose in the second department, did not involve the construction of the Consolidation Act, nor the Greater New York charter.

except so far as necessary to determine how far its provisions affected the rights of one who became a member of the police force of the city of Brooklyn before consolidation took place. Therefore, what is said in the opinion as to the Consolidation Act, to the effect that the promotion of members of the police force should be made only on grounds of "meritorious police service and superior capacity," and that this clearly permitted the promotion of a patrolman for such conduct as that which led to the promotion of the relator in that case, is *obiter.* The question how promotions might be made outside the borough of Brooklyn, and of others than such as had become members before the consolidation, it was not necessary there to decide nor was it decided. It is apparent that whether an officer was entitled to promotion "on account of any gallant or meritorious deed in the discharge of his duty," under the Brooklyn charter, could not be determined by competitive examination. But, under the provisions of the statutes and civil service rules applicable to this case, which require the transmission to the civil service commission of the record of each candidate for promotion, all questions of "seniority, meritorious police service and superior capacity" may be determined by the commissioners, and this includes heroic conduct with the other matters. What the court really determined in the *Schelpp* case was that the relator, by reason of the statutes in force when he became a member of the police force, acquired a vested right to be promoted for gallant conduct, which had not been attempted to be taken away. Such a case is not now before us. I, therefore, concur in this opinion.

O'BRIEN, J. (dissenting):

I dissent upon the authority of *People ex rel. Schelpp* v. *Knox* (48 App. Div. 479) for the reasons therein given. It is true the question there arose as to the right of the police commissioners in the late city of Brooklyn to promote patrolmen for gallantry; but the court in that case examined and discussed the question from the standpoint of the power possessed by the police authorities of the former cities of New York and Brooklyn and in that connection, as said in the opinion: "It is plain that when the cities of New York and Brooklyn came together to form the Greater New York, the police authorities in *each* city were authorized to promote police-

men for gallant conduct." This was the conclusion reached after an examination of the provisions of the Civil Service Law, the Consolidation Act of New York city and the provisions of the Greater New York charter, and I think it should be followed, and, therefore, am for affirmance, with costs.

Order reversed and motion for mandamus denied, with costs.